## FORDHAM et al. v. MARRERO.

(Circuit Court of Appeals, First Circuit. May 12, 1921.)

No. 1468.

1. **Bastards** ☞6—**Evidence held to show recognition of plaintiff as natural child.**

Evidence of decedent's actions toward plaintiff and of his bequest to her *held* sufficient to sustain a finding that decedent had acknowledged plaintiff as his natural child, within Civ. Code of Spain, art. 135, then in force in Porto Rico.

2. **Courts** ☞406(1)—**Concurrent findings on question of mixed law and fact by Porto Rico courts affirmed, unless plainly wrong.**

The finding of the District Court and the Supreme Court of Porto Rico, which were learned in Spanish law, on the testimony and involving

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

findings of mixed law and fact, should not be disturbed by the Circuit Court of Appeals, unless plainly wrong.

**3. Divorce ⊙⟝320—New York divorce decree prohibiting remarriage has no effect in Porto Rico.**

The provision in a decree of divorce granted by a New York court prohibiting remarriage by the husband had no extra-territorial force, and constituted no bar to the marriage of the husband in Porto Rico.

**4. Territories ⊙⟝10—General order permitting remarriage of divorced persons superseded Code prohibition.**

The general order issued March 17, 1899, by Maj. Gen. Henry, authorizing marriage by divorced persons, had the force of law in Porto Rico, and superseded the old Spanish Code, under which a divorce did not release from the bonds of matrimony, and therefore did not permit remarriage.

**5. Bastards ⊙⟝8—Proceeding to establish status as recognized natural child is quasi in rem, in which service by publication is permissible.**

A proceeding in the courts of Porto Rico to establish the status of plaintiff as the recognized natural child of decedent is one in which the judgment, if not strictly a judgment in rem, is one quasi in rem, as is a decree of divorce, so that service by publication and by mail, in the manner authorized by the Code of Porto Rico, of a nonresident defendant, who could not be personally served, was sufficient to give the court jurisdiction to enter the default of the nonresident.

**6. Bastards ⊙⟝8—Contingent beneficiaries not necessary parties to establishment of rights of natural child, without proof condition had happened.**

The failure to make the sisters of testator parties to a suit by plaintiff to have her status and rights of inheritance as the acknowledged natural child of testator established was not error, where under the will the sisters could take only in event of the death of testator's mother, and her death was not proven, so that the sisters were not necessary parties.

**7. Evidence ⊙⟝82—Appointment of judge assumed to have been confirmed, in absence of proof to the contrary.**

In the absence of proof that the appointment of the District Judge of Porto Rico who tried the case had not been confirmed by the Senate at the time of the trial, it must be assumed that he had been legally appointed and confirmed, though he stated at the beginning of the trial that he had been notified of his reappointment, but had not yet received notice that such appointment had been confirmed.

Appeal from the Supreme Court of Porto Rico.

Action by Amelia Marrero against Maria D. Fordham and another, to have plaintiff adjudged the acknowledged natural child of Charles M. Boerman, with the right to inherit a part of his estate. A judgment for plaintiff was affirmed by the Supreme Court of Porto Rico, and defendants appeal. Affirmed.

O. B. Frazer, of San Juan, P. R. (Rounds, Hatch, Dillingham & Debevoise, of New York, on the brief), for appellants.

Jose Tous Soto, of Ponce, P. R., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from a final judgment of the Supreme Court of Porto Rico, affirming a judgment of the district court for the judicial district of Ponce. The action arose upon a complaint filed by the appellee in which she represented that she is the acknowledged natural child of Rafael Marrero, born in Ponce, Porto Rico, on September 16, 1901, as the offspring of illicit carnal

relations between the said Rafael Marrero and Charles M. Boerman, while both were unmarried and without any bar of any kind to contract marriage, not only at the time of the birth of the plaintiff, but also at the time of her conception; that Charles M. Boerman died on January 30, 1915, without leaving any legitimate descendants, but leaving a will which was probated and protocoled by judgment of the district court of Ponce, in which will the said Charles M. Boerman named as his sole and universal heirs in equal shares his wife, Maria D. Boerman, née Fordham, a resident of Porto Rico, and his mother, Ester Bessie Boerman, a resident of Ponewiesch, Russia, and bequeathed a legacy of $5,000 to the appellee, to be held in trust until she reached the age of 25 years, and upon which she was to receive interest at 6 per cent. annually until she reached that age; that from the time of her birth until the death of the said Charles M. Boerman the appellee was continuously in the possession of the status of a natural child of Boerman; that he always provided for her food, raiment, shelter, medical attention, and education; that he constantly looked after her education, personally enrolled her in the public schools under the surname of Boerman, and introduced and recommended her to the teachers as his daughter; that publicly and privately he treated her as his daughter, and called her daughter, and consented and requested that she call him father; that he took a constant interest in her welfare, made presents to her, and on many occasions said to different persons that she was his daughter; that he desired her to be considered and treated as such; that she was so considered and treated by all who knew her; that Charles M. Boerman, at his decease, was the owner of property of the value of more than $60,000, consisting largely of real estate situated in Porto Rico; and the appellee prayed that she be adjudged the acknowledged natural child of Charles M. Boerman, with the right to bear his surname and to inherit one-fourth part of all the estate left by her natural father, and that the $5,000 bequeathed her in his will be reckoned as a part of her share of his estate, but free from the restrictions imposed upon it in the will.

Service by publication and by notice through the mail was ordered upon Ester Bessie Boerman in accordance with sections 94 and 95 of the Code of Civil Procedure of Porto Rico. Notice was published as ordered, but the notice sent to her address in Russia never reached her and she was defaulted.

The other defendant, Maria D. Fordham, filed an answer, which contained a general denial of all the allegations in the bill of complaint, and also alleged that Charles M. Boerman married in the city of Chicago, Ill., on November 15, 1893, one Sophia Boerman; that she obtained a decree of divorce from Charles M. Boerman in the Supreme Court of the state of New York on May 25, 1900, on the ground of adultery; that in the decree granting the divorce there was a provision that it should not be lawful for the said Charles M. Boerman "to marry again until the said Sophia Boerman, the plaintiff, shall be actually dead"; that when the said decree of divorce was granted, and until 1903, Charles M. Boerman was a citizen of the state of New York, although domiciled in Porto Rico, and that according to the

laws of the state of New York, in force from 1900 to 1903, Charles M. Boerman was incapacitated to contract marriage, because the laws of the state of New York under which said decree of divorce was granted had extraterritorial effect by reason of the citizenship of Charles M. Boerman; that on September 16, 1901, the date of the birth of Amelia Marrero, the decree of divorce had no other force in Porto Rico than to suspend the community life of Charles M. Boerman and Sophia Boerman, according to the provisions of the Spanish Civil Code then in force in Porto Rico, and that therefore Charles M. Boerman was then incapacitated to contract marriage in Porto Rico; that Charles M. Boerman in his will alleged that he was married to Maria D. Fordham, and that he had had no child either by her or by any other woman, and that the said Rafael Marrero was a woman of libidinous habits and had carnal connection with various other men during the period between the years 1899 and 1902.

The trial was held in the district court for the judicial district of Ponce before Hon. Domingo Sepulveda, District Judge. Before commencing the trial on November 2, 1917, Judge Sepulveda announced that the term of four years for which he had been appointed expired on November 1, 1917; that he had been reappointed by the Governor as judge of the district court of Ponce, and his appointment had been transmitted to the Senate; but he had yet no knowledge that his appointment had been confirmed. The attorneys upon both sides stated that they made no objection to Judge Sepulveda's hearing the case and he proceeded with the trial. He ruled that the prohibition in the decree of divorce that Charles M. Boerman should not marry during the lifetime of Sophia Boerman, his former wife, had no extraterritorial effect and did not constitute a bar to his marriage in Porto Rico at the time of the birth of the appellee. He found as a fact that Charles M. Boerman resided in Porto Rico from the year 1899 until he died in 1914, and that under the law and the facts Amelia Marrero is his acknowledged natural child, with the right to bear his surname and inherit from him the part of the estate which the law allows her as such.

Upon the judgment entered upon his findings of fact and rulings of law there was an appeal to the Supreme Court of Porto Rico, which, in a very careful opinion by the Chief Justice, affirmed the judgment of the court below, after examination of all the testimony and the written and oral pleadings of all the parties.

There are 22 assignments of error, but only 5 are now relied upon by the appellant:

First. That the Supreme Court of Porto Rico erred in finding and holding that the evidence presented was sufficient to establish the status of the plaintiff, Amelia Marrero, as an acknowledged natural child of Charles M. Boerman.

Fifth. The Supreme Court of Porto Rico erred in finding and holding that Charles M. Boerman was capable of having a natural child at the time of the conception and birth of the plaintiff, Amelia Marrero.

Fifteenth. The Supreme Court of Porto Rico erred in not finding and holding that the district court for the judicial district of Ponce had no jurisdiction to try and render judgment in this case, inasmuch

as said district court never obtained jurisdiction over the defendant Ester Bessie Boerman.

Sixteenth. The Supreme Court of Porto Rico erred in not finding and holding that Charles M. Boerman's sisters, to wit, Rachel Krasnetsky, Glikka Kessler, Rebecca Kagan, Sara Beilinson, and Anna Gayman, were necessary parties to this suit.

Twenty-second. The Supreme Court of Porto Rico erred in finding and holding that Judge Sepulveda was legally qualified to try and decide the issues in and render judgment therein as judge of the district court for the judicial district of Ponce.

[1] Upon the first assignment of error it is sufficient to say that the acknowledgment by Charles M. Boerman of the appellee was sustained by the testimony of the mother of the appellee and several witnesses who were in a position to know the relations of Charles M. Boerman to the appellee and his acts toward her, tending with greater or less force to show an acknowledgment by him of her as his natural child. The will itself, in which he made a provision of $5,000 for her, showed his affection for her and concern for her future welfare, and his widow testified that her husband proposed at one time to adopt the girl, because he had heard that her mother had given the girl his surname and that he thought of adopting her, because he believed he should; but that she objected to it "because any one might believe the rumor that she was his daughter for the reason that she bore his surname."

She claimed that her husband did not carry out his purpose of adoption, because he was informed that if the appellee were adopted she would have the same rights as if she were his own daughter, and that he did not desire this.

We have carefully examined the transcript of testimony and concur in the finding of the Supreme Court that—

"It presents strong and convincing proof in support of the conclusion that plaintiff, Amelia Marrero, has been in the continued possession of the status of natural daughter of Charles M. Boerman by reason of the direct acts of the said Boerman with regard to the plaintiff, as required by section 135 of the Spanish Civil Code, cited by the appellate as applicable to the case because it was in force at the time of the birth of said plaintiff."

At the time of the birth of the appellee the Civil Code of Spain relating to the acknowledgment of children born out of wedlock was in force in Porto Rico (Mendez v. Martinez, 21 P. R. R. 238), and this provided as follows:

"Art. 135. The father is obliged to acknowledge the natural child in the following cases:

"1. When an indisputable paper written by him, expressly acknowledging his paternity, is in existence.

"2. When the child is in the uninterrupted enjoyment of the status of a natural child of the defendant father, justified by direct acts of the said father or of his family."

[2] There was no claim of acknowledgment by any written document, and the case was tried in the district court of Porto Rico upon the claim that the requirements of paragraph 2 of article 135 had been met. Both the district court and the Supreme Court, learned in Spanish law and familiar with the evidence required to determine what acts

273 F.—5

of the father should constitute strong and convincing proof of the acknowledgment of a natural child by a father, have found that the testimony was sufficient. The district court said of it that it satisfactorily proved the cause of action, save only the allegation of the fourth count regarding the existence of properties; and the Supreme Court characterized it as "strong and convincing as required in cases of the acknowledgment of natural children." The finding of two courts familiar with the local law, upon the testimony and involving the findings of mixed law and fact, should not be disturbed by us unless plainly wrong.

We do not think that it is, but, on the other hand, that the evidence is plenary; that in many ways Charles M. Boerman publicly treated the appellee as his daughter, manifesting a deep interest in her education, and being willing that she should bear his surname. This disposes of the first assignment of error.

The fifth assignment of error, relied upon, is that the court erred in not ruling that the appellee could not be the natural child of Charles M. Boerman, for the reason that article 119 of the Civil Code, in force in Porto Rico in 1901, provides as follows:

"Art. 119. Only natural children can be legitimized. Natural children are those born out of wedlock of parents who, at the time of the conception of the child, could have married with or without dispensation."

[3, 4] Both the Porto Rican courts have held that the prohibition in the decree of divorce granted by the Supreme Court of New York in 1900 had no extraterritorial force and constituted no bar to the marriage of Boerman with the mother of Amelia at the time of her conception and birth. This ruling was clearly right and is not seriously attacked; but it is contended that, under the law in force in Porto Rico, Amelia was not the "natural child" of Boerman, because he could not then have married her mother, and therefore she could not be legitimized. While under the Code in force in Porto Rico at the time of the American occupation, in 1899, a divorce did not release from the bonds of matrimony, but only created a suspension of the marital relation, as did at common law a decree a mensa et thoro, and it also provided that those who were already bound in marriage could not contract marriage, this was materially changed by a general order issued March 17, 1899, by Maj. Gen. Guy V. Henry, which provided that marriage could be contracted by divorced persons, with certain exceptions, which do not include Boerman. This general order had the force of law in Porto Rico and superseded the old Spanish Code.

We find no error in the ruling of the Supreme Court of Porto Rico that the prohibition in the decree of divorce granted by the Supreme Court of New York had no extraterritorial force, and that, because of this general order, there was no bar to the marriage of Boerman with the mother of the appellee at the time of the conception and birth, and therefore no legal reason why she could not be the natural child of Boerman and legitimatized by him.

[5] The fifteenth assignment of error relates to the jurisdiction of the district court of Ponce to render judgment when there was only notice by publication to one of the defendants, Ester Bessie Boerman. While service by publication and by mail was ordered upon the mother

of Boerman, who was alleged to be a citizen and resident of Russia, a letter addressed to her was not delivered, because of the unsettled conditions in Russia owing to the war, and it does not appear that she had any notice of the pendency of the suit. The order of notice upon her was authorized by the statute in force in Porto Rico in the case of nonresident defendants, and this order was strictly complied with. As this was a proceeding to determine the status of the plaintiff in a suit of filiation, it was a proceeding in rem, and if her status was found to be that of an acknowledged natural child, then the law would determine her right in the estate of the acknowledging father.

Upon questions involving the status of its citizens every state is sovereign. Porto Rico has, with the sanction of the United States, enacted laws in regard to the acknowledgment of illegitimate children, and in the execution of these laws it exercises the powers of a sovereign state, and a judgment rendered by its courts in their execution can only incidentally affect nonresidents. Such a judgment, if not strictly a judgment in rem, is one quasi in rem, as is a decree of divorce, which only dissolves a marriage, and does not contain any provision for the payment of alimony. As there is no suggestion that the order of notice upon the absent defendant, Ester Bessie Boerman, was not strictly complied with, we think the district court of Porto Rico had jurisdiction to enter her default.

[6] The sixteenth assignment of error, relating to the failure to make the sisters of Charles M. Boerman parties, was not argued below. It was only in the event of the death of the mother of the testator that his sisters would take under his will. Her death was not proven, and they were not necessary parties.

[7] The last assignment of error is that Judge Sepulveda was without jurisdiction to try the case. The Supreme Court found that there was no evidence that the appointment of Judge Sepulveda had not been confirmed when he heard the case, and in this we concur. It is true that he announced that he had received notice of his appointment, but had not been notified that the appointment had been confirmed; but, if it had not been confirmed, this could have been easily proven. This was not done, and the presumption must stand that he had been legally appointed and confirmed.

The judgment of the Supreme Court of Porto Rico is affirmed, with costs to the appellee in this court.